**Rickey Larosa EZELL, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15583.**

Court of Criminal Appeals of Oklahoma.

Sept. 29, 1971.

As Corrected Oct. 5, 1971.

Don Anderson, Public Defender, Oklahoma County, Arnold T. Fleig, Oklahoma City, for plaintiff in error.

Larry Derryberry, Atty. Gen., Odie A. Nance, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Rickey Larosa Ezell, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the offense of Murder, with punishment set at Life imprisonment; and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial adduced that the defendant, age 16, fired a shotgun that killed Henry Watts on May 17, 1969. Gale Bennett, Charles Green, and Rickey Hooks testified that they were at the scene and described various fights prior to the homicide. They observed the decedent running toward the defendant, and heard a shot. Watts fell to the ground, and the defendant ran—carrying a sawed-off shotgun. The witness Hooks heard the defendant yell "halt" and observed something shiny prior to the shot.

Officer Acox arrested the defendant and testified that after being advised of his rights in the presence of his mother and legal guardian; the defendant, his mother and legal guardian signed a waiver of rights and the defendant made a statement that he was holding the gun and pointed it at Watts who was pursuing him and the gun went off accidentally. The written waiver was not offered as evidence.

Benjamin Davis testified that the gun involved was his sister's, and after the shooting the defendant put the gun in his car. He became frightened and dismantled the gun and threw the pieces away. Davis observed what he thought was a knife in Watts' hand as he was running toward the defendant just prior to the shot.

Leon McHenry testified for the defense that Watts was chasing the defendant with what appeared to be a knife and the defendant told him to "halt" prior to the shot.

Victor Little, the defendant's brother, also saw the deceased run toward the defendant who was yelling for him to "halt".

The defendant testified in his own behalf that Watts started running toward him with what he thought was a knife; he told him to "halt", he backed up and pulled the trigger just before Watts got to him.

Ronald McKinney testified for the state in rebuttal that he was assigned to the park as a police officer. He heard a shot and observed Watts lying on the ground. He did not see a knife in Watts' hand, or in the immediate vicinity.

The defendant was represented by the Public Defender's Office, who now offers as their chief assignment of error that the trial court erred in admitting into evidence, over defendant's objection, the statement defendant made to the police at 12:30 A.M. He contends that defendant was 16 years old on the day of the alleged crime, and was not competent to waive his constitutional rights, even though his legal custodian and mother were present. From the evidence, it appears that the defendant had been placed in the custody of some woman rather than his natural mother. However, on the night of the alleged crime, defendant was brought to the jail by Officer Acox, and was followed in a separate vehicle by defendant's mother, and legal guardian, also a negro woman, and who was present during the custodial interrogation of defendant, who purportedly confessed. It is defendant's contention that a 16 year old boy, who yesterday was a child of 15 years, was denied his constitutional right to have counsel present, and that he was incapable because of his age to waive that right.

The state attempts to refute this contention by showing that the mother and legal custodian were present and also signed the waiver. And, Officer Acox contends that he exhibited a card bearing the admonition laid down by the United States Supreme Court in Miranda v. Arizona. However, the waiver or the card were never introduced in evidence and there was no inquiry as to their whereabouts. We are doubtful if the legal custodian or the mother made any difference as to whether he was afforded his constitutional rights in regard to the confession. It was never shown or was any attempt made to show either was knowledgeable in the law and therefore capable of protecting defendant's constitutional rights. In a recent case, People v. Zepeda, 116 Ill.App.2d 246, 253 N.E.2d 598 (1969), the court of appeals said:

> "The constitution affords no right to the presence of anyone other than a lawyer trained to protect the legal rights of those accused, while the presence or absence of a parent or responsible adult may be a factor affecting the voluntariness of a confession, there is no constitutional right to the presence of a parent. We find that the Escobedo doctrine is not applicable to a request for anyone other than an attorney."

It is reasonable to assume that a minor of tender years is deemed to be incapable of waiving his constitutional rights, in the absence of a showing as to his knowledge of the law and that he fully understood the consequences of the waiver and fully understood the effect thereof. This Court said in Story v. State, Okl.Cr., 452 P.2d 822 (1969), that:

> "Ordinarily, confessions of defendant 17 and 18 years of age, [defendant in case before us now was 16] accused of burglary, are inadmissible in evidence where there is absence of parent or guardian, or counsel, since such defendants should be deemed incapable of waiving the constitutional and statutory safeguards provided by law in a criminal case, unless it appears beyond a reasonable doubt that the minor defendants fully understood the effect and the results growing out of such waiver."

There was no evidence as to the ability of the minor to comprehend the effect of his waiver. Nor, any evidence showing the ability of his mother or legal custodian to properly advise him. The custodial examination took place at approximately 1:30 in the morning at police headquarters before Officers Acox and Schimmels. The record is free of any history of defendant having any encounters with law enforcement officers and *as far as the evidence is concerned,* it was defendant's first experience with officers or interrogation while in-custody.

 It is to be observed that the able and learned Judge Lansden, who presided over this trial, admonished the state as to his opinion of the admissibility of said confession in the following language:

"Well, it's the position of this Court that any statement taken from a minor of 16 years, even though his mother and legal guardian were present, are questionable because it is the position of this Court that it's rather doubtful that if a sixteen year old boy has sufficient capacity to understand and waive his constitutional rights. However, I know of no case squarely in point, and if the state wants to put that sort of evidence in, I'll permit them to do so."

In this Court's opinion, it would always be best to have counsel present for minors of tender years before a statement is taken for the purpose of introducing it as evidence.

And, we hold in the instant case that the purported confession was inadmissible and constituted error. However, the statement was of an exculpatory nature and with few exceptions was confirmed by the defendant when he took the stand.

 Both state and defense witnesses testified that defendant warned the deceased to stop as he was coming toward him. There was also evidence of deceased having what appeared to be a knife in his hand as he approached the defendant. There was evidence that defendant was attempting to protect his brother who was being attacked by the deceased. The case now before us borders closely on justifiable homicide. The jury had to disbelieve witnesses of both sides in order to find defendant guilty of murder. Defendant complains because there was no instruction of the lesser and included offense of manslaughter. The only basis for such an instruction was when Officer Acox said defendant confessed that he pointed the gun at the deceased and ordered him to stop, but didn't pull the trigger, that the gun just accidently discharged. This testimony was the only justification for an instruction on manslaughter.

However, because of weakness of the murder charge, we feel that justice would be best served if the judgment be reduced to Manslaughter, the life sentence impressed by the jury be reduced to Twenty-Five (25) years in prison, and it is so ordered. Modified and affirmed.

BUSSEY, P. J., and BRETT, J., concur.