David Lee GARNER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17593.

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1972.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant, David Lee Garner, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Robbery with Firearms; his punishment was fixed at eighteen (18) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Ralph Volz testified that on June 26, 1971, he was employed as a driver for the Capitol City Cab Company. At about 3:00 a. m. he answered a call at the Lime Creek Bar in Oklahoma City. A man and a woman got into the back seat of his cab and one man got in the front seat. A fourth man pointed a gun at him, announced it was a stickup and said they wanted the cab. He got out of the cab, left them his money, approximately Eighty Dollars ($80.00), and hurried down the street to try to find a telephone. He could not identify any of the persons but testified there was a "similarity between the defendant and the person that was holding the gun."

Leona Ruth Watkins testified that on June 26, 1971 she was fifteen years old and married to Richard Lee Watkins, a co-defendant. Early that morning she was at the Lime Creek Bar with her husband, defendant and co-defendant Garcia. They planned a robbery and at her husband's request, she called for a cab. When it arrived, she and her husband got in the back seat and the defendant and co-defendant Garcia got in the front. She testified that "they pulled a gun and told the taxicab driver to give them the money and he handed over the money and after they got the money, my husband drove the taxi." (Tr. 18) The driver ran down the street and her husband drove the taxi behind a Kerr-McGee service station on Pennsylvania where it was abandoned.

The trial court thereupon conducted an evidentiary hearing outside the presence of the jury on defendant's motion to suppress the statement given by the defendant. The defendant testified that he was seventeen (17) years old and quit school in the tenth grade. He testified that he was interrogated on Sunday by police officers about various robberies and was told to come

back the following morning for some more questions. He testified that the officers advised him of his rights on Sunday in the presence of his father and that he understood his rights and that, "I knew what he was talking about." He testified that he agreed to take a lie-detector test the following day but did not take it. The officers did not advise him of his rights on Monday prior to giving the statement. Defendant's motion to suppress was overruled by the trial court.

Officer Phelps testified that he talked to the defendant at the police station on June 26 or 27, first giving the defendant the Miranda rights in the presence of defendant's father. Defendant and his father both acknowledged that they understood the rights. Defendant advised the officer that he knew nothing about the robberies they were questioning him about. Defendant was advised to come back to the police station the following day and when he arrived, he was placed under arrest. Upon the defendant's arrival the following day, he was placed under arrest for armed robbery and was again advised of his Miranda rights and acknowledged that he still understood them. He told the officer that he, Richard Watkins, his wife, Leona, and another person discussed calling a cab down to the Lime Creek Bar where they were going to rob it. Richard Watkins and his wife got in the back seat of the cab when it arrived and the other fellow got in the right front passenger seat. He stood outside the door with a gun in his hand and told the cab driver he wanted the money. Watkins told the cab driver to get out and throw the money in the seat and to take off running. The other fellow in the front seat couldn't get the car running and Watkins drove the car from the scene. The car was left abandoned behind a Kerr-McGee station in the 900 block of South Pennsylvania.

Ralph Volz was recalled and testified that his cab was recovered behind a Kerr-McGee station on Pennsylvania.

Defendant did not testify nor was any evidence offered in his behalf.

The sole proposition asserts that "defendant was convicted on accomplice's testimony which was not corroborated by any legally admissible evidence." Defendant argues that the witness, Leona Watkins, was an accomplice and as such her testimony alone cannot support the conviction. The defendant further contends that the confession was not legally admissible and therefore the accomplice's testimony was not sufficiently corroborated to permit conviction. The basis of defendant's contention is that the defendant was seventeen years of age and had just finished the ninth grade of school; that, although his father was present on the Sunday when the Miranda warnings were given, he was not on the following Monday when the defendant confessed. Defendant cites as authority Ezell v. State, Okl.Cr., 489 P.2d 781, wherein this Court approved the language used in Story v. State, Okl.Cr., 452 P.2d 822, wherein the Court said:

> "Ordinarily confessions of defendants 17 and 18 years of age, [defendant in case before us now was 16] accused of burglary, are inadmissible in evidence where there is absence of parent or guardian, or counsel, since such defendants should be deemed incapable of waiving the constitutional and statutory safeguards provided by law in a criminal case, unless it appears beyond a reasonable doubt that the minor defendants fully understood the effect and the results growing out of such waiver."

We have carefully examined Ezell, supra, and are of the opinion that the same is distinguishable from the instant case. In Ezell, the defendant had just turned 16 years old on the day of the alleged ofense. He was taken to the police station the night of the shooting and was questioned in the presence of his mother and legal guardian and made a statement to the officers. In the instant case, the defendant was seventeen years of age and had completed the ninth grade. On a Sunday morning a police officer came by his house and told him that a detective at the police department wanted to talk to him. He and his father went to the

police station and was advised of his Miranda rights in the presence of his father. The defendant and his father both acknowledged that they understood the rights. Defendant testified at the evidentiary hearing as follows:

"Q. When he advised you of your rights on Sunday, did you understand what they were?

"A. Yes, sir, I did. I knew what he was talking about." (Tr. 55)

Then the defendant was questioned and, when he denied knowledge of the robbery, was released and advised to return the following day. As the Attorney General succinctly points out in his brief:

"[T]he defendant here knew that he was to be questioned the next day, he knew what his rights were, his father was present and he, too, knew what his son's rights were. The defendant had time to evaluate his position in the solace of his own home or discuss his alternatives with his father. He was not put in the position of having to make an immediate decision as to whether to hire an attorney or not. Are we to believe that the defendant did not take advantage of this time for reflection, gave his predicament no heed at all in the light of the admission that he knew he had the right to counsel and that the State would provide one if he was financially unable to hire a private attorney? Obviously, the defendant decided to appear at the police station without counsel and once there reaffirmed this decision by not then seeking counsel."

In *Ezell*, supra, Judge Nix stated:

"It is reasonable to assume that a minor of tender years is deemed to be incapable of waiving his constitutional rights, in the absence of a showing as to his knowledge of the law and that he fully understood the consequences of the waiver and fully understood the effect thereof. * * *"

Defendant in the instant case, by his own testimony, acknowledged that he understood the consequences of the waiver of his Miranda rights. We therefore conclude that the trial court properly overruled defendant's motion to suppress the confession.

The judgment and sentence is accordingly affirmed.

SIMMS and BRETT, JJ., concur.