561 F.2d 1351
 Louis Jay BROMLEY, Petitioner-Appellant,
v.
Richard CRISP, Warden, Oklahoma State Penitentiary,
McAlester, Oklahoma, Respondent-Appellee.
David Lee GARNER, Petitioner-Appellant,
v.
The STATE OF OKLAHOMA, Respondent-Appellee.
Gary Michael RUTLEDGE, Petitioner-Appellant,
v.
Jerry SUNDERLAND, Warden, Oklahoma State Reformatory,
Respondent-Appellee.
Billie Jay KILLION, and Delmar Eugene Hanley, Petitioners-Appellants,
v.
Dave FAULKNER, Sheriff, Tulsa County, State of Oklahoma,
Respondent-Appellee.
Derek Lee WILSON, Petitioner-Appellant,
v.
Dave FAULKNER, Sheriff, Tulsa County, State of Oklahoma,
Respondent-Appellee.
William Lynn STRINGFIELD, Petitioner-Appellee,
v.
John GRIDER, Warden, Oklahoma State Reformatory, Granite,
Oklahoma, et al., Respondents-Appellants.
 Nos. 75-1593, 75-1830, 76-1043, 76-1044 and 76-1988.
 United States Court of Appeals,
Tenth Circuit.
 Argued July 9, 1976.
Decided April 12, 1977.
Rehearing Denied Sept. 2, 1977.*
 
 Fred P. Gilbert, Tulsa, Okl., for petitioners-appellants in Nos. 75-1593, 75-1830, 75-1968, 76-1043, 76-1044, and for petitioner-appellee in No. 75-1988 (Andrew T. Dalton, Jr., Tulsa, Okl., on the brief).
 Kay Karen Kennedy, Asst. Atty. Gen., Oklahoma City, Okl. (Larry Derryberry, Atty. Gen., Oklahoma City, Okl., on the brief), for respondents-appellees in Nos. 75-1593, 75-1830, 75-1968, 76-1043, 76-1044, and for respondents-appellants in No. 75-1988.
 Mary E. Bane, of Bane & Williams, Oklahoma City, Okl., for petitioner-appellant in No. 75-1968.
 Marvin E. Spears, Asst. Dist. Atty., Tulsa, Okl. (S. M. Fallis, Jr., Dist. Atty., Tulsa, Okl., on the briefs), for respondent-appellee, Faulkner, in Nos. 76-1043 and 76-1044.
 Before LEWIS, Chief Judge, HILL, SETH, HOLLOWAY, McWILLIAMS, BARRETT and DOYLE, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 These habeas suits present various questions arising from the unconstitutionality of Oklahoma juvenile code provisions which have been held invalid due to a sex-based discriminatory provision allowing male youths 16 and 17 years of age to be prosecuted as adults under the State criminal laws while requiring that females of those ages be treated under the juvenile code of Oklahoma unless first certified to stand trial as adults. See 10 O.S.Supp.1969 § 1101(a). In Lamb v. Brown, 456 F.2d 18 (10th Cir.), we held that statute invalid under the Equal Protection Clause due to the sex-based discrimination since no adequate basis for the different treatment was shown. The Oklahoma court made similar rulings on sexual disparities in the children's code. Schaffer v. Green, 496 P.2d 375, 377 (Okl.Cr.).
 In Lamb v. Brown, we stated that "(t)his ruling shall not apply retroactively." 456 F.2d at 20. On varying theories, the Oklahoma Courts have also held that the invalidation of the sex-based differentiation does not affect prior cases. See Schaffer v. Green, supra, 496 P.2d at 377-78; Freshour v. Turner, 496 P.2d 389 (Okl.Cr.); Dean v. Crisp, 536 P.2d 961 (Ok.Cr.).[1] However, in Radcliff v. Anderson, 509 F.2d 1093 (10th Cir.), cert. denied, 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95, the question of retroactivity of the equal protection holding on the Oklahoma statute was presented for decision and we concluded that principles of basic fairness and essential justice required retroactive application of the Lamb decision. Id. at 1096.[2]
 
 
 1
 The petitioners in these cases asserted claims in State courts under the Lamb and Radcliff principles for relief from prior convictions on the ground that their treatment as adult males at 16 or 17 denied their equal protection rights. After denial of State court relief these federal habeas suits were brought in the Northern and Western Districts of Oklahoma, and the cases have now reached us.
 
 
 2
 As the trial court noted in the Garner case (No. 75-1830), in a federal habeas suit the question whether the conviction can stand in view of the violation of the Equal Protection Clause is a federal question, just as the meaning of the Clause itself is a federal question. Chapman v. California,386 U.S. 18, 21, 87 S.Ct. 824, 17 L.Ed.2d 705. Hence the retroactivity of the Lamb principle is a federal question. See Sessor v. Gunn, 529 F.2d 932, 935 (9th Cir.), cert. denied, 429 U.S. 1111, 97 S.Ct. 1150, 51 L.Ed.2d 566. We recognize that the State Courts are fully entitled to decide such federal questions when presented to them, as they have, and we have carefully considered their opinions on the retroactivity problem. We agree with the Oklahoma Court of Criminal Appeals in its view in Dean v. Crisp, supra, 536 P.2d at 963, that the Oklahoma Courts may express their differing views on the retroactivity problem or similar federal questions until we are all guided by a binding decision of the Supreme Court. See United States ex rel. Lawrence v. Woods, 432 F.2d 1072 (7th Cir.), cert. denied, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148. Nevertheless, when habeas cases are properly before the federal courts they must decide federal questions such as are presented here, giving the conclusion of the State Court the weight of a decision of a court of last resort of another jurisdiction.[3] See Fay v. Noia, 372 U.S. 391, 421-24, 83 S.Ct. 822, 9 L.Ed.2d 837; Brown v. Allen,344 U.S. 443, 458, 73 S.Ct. 397, 97 L.Ed. 469; Sessor v. Gunn, supra, at 935.
 
 
 3
 The seven cases before us now involve similar basic problems flowing from the prior inequality of treatment of male youths. In No. 75-1988, Stringfield v. Grider, the district court granted the writ on the basis of the Radcliff decision.[4] In the remaining cases, federal habeas relief was denied on different grounds which we will detail in discussing the appeals.
 
 No. 75-1830 Garner v. State of Oklahoma
 
 4
 In 1972 at age 17, petitioner Garner was convicted in a jury trial of robbery with firearms and sentenced to 18 years' imprisonment. He was prosecuted as an adult, without certification which was then required if a girl of that age was to be prosecuted as an adult. His conviction was affirmed on direct appeal. Garner v. State, 500 P.2d 1340 (Okl.Cr.). Garner then sought post-conviction relief in the Oklahoma courts, which was denied.
 
 
 5
 This federal habeas action was then brought for relief under the Equal Protection Clause, alleging discriminatory treatment against Garner on the basis of sex. The trial court conducted an evidentiary hearing. The court found that to a moral and legal certainty no juvenile court would have denied transfer for treatment as an adult, that the gravity of the offense was such that it would be unreasonable to assume that any court would have denied transfer, that the crime was not an isolated incident but one of several similar crimes, and that there was no reasonable doubt that certification would have been granted. (R. I, 137-38). The writ was denied and this appeal followed.
 
 
 6
 We turn to the main points argued for reversal. A brief of counsel and a pro se brief were combined for Garner and we have reviewed all the contentions raised.
 
 
 7
 First, petitioner says there was absolutely no evidence to support the district court's finding, nunc pro tunc, that he would have been certified to stand trial as an adult (Brief of Appellant Garner, 76-83). He argues that the statutory standard in 1971 consisted solely of whether the juvenile was capable of knowing right from wrong, that there was no independent evidence of his mental or moral state, and that certification had to be proven beyond all doubt and contradiction, citing Ex parte Hightower, 130 Okl.Cr. 472, 165 P. 624, 626-27, which was not done.
 
 
 8
 The State's proof at the federal hearing showed the following: The armed robbery offense in question occurred on June 26, 1971, when petitioner was 17 years of age, his birthdate being May 25, 1954. In 1969 at age 15 he had been made a ward of the juvenile court for delinquency, the child and parents being present. He and his parents were told that the time during a subsequent investigation would be a probationary period. In January, 1970, the child, parents and their attorney were present and Garner admitted he had been apprehended in a car he had taken unlawfully and that he had also taken five others cars in November and December. The court found he should not then be certified but should be given an opportunity in a children's institution and was in need of training to know the consequences of his acts. (R. II, 200).
 
 
 9
 In January, 1971, he pled guilty to forgery in the second degree and received deferred sentencing treatment, to which conditions for good behavior were attached. In June, 1971, he was then charged with the armed robbery in question. He was also charged with two other offenses, all three occurring on June 26 and 27, 1971. Following his January 6, 1972, jury conviction on the instant robbery charge, on February 10 Garner pled guilty, with counsel present, to included offenses of concealing stolen property on the other June, 1971, charges and received two year concurrent sentences on each.[5]
 
 
 10
 On February 10, 1972, Garner also pled guilty, with counsel present, to an application and charge to accelerate sentencing on the earlier January, 1971, forgery offense. This application alleged violation of the terms of the deferred sentence by the three June, 1971, offenses. Garner answered detailed questions in writing, saying that he understood the charge of violation of the terms of his deferred sentence. He pled guilty and received a further two-year sentence.
 
 
 11
 Petitioner offered no evidence at the federal evidentiary hearing other than giving his name and birthdate, after which he claimed the privilege against self incrimination. His counsel challenged the sufficiency of the State's proof by proper motions.
 
 
 12
 As noted, the court found that there was no reasonable doubt that certification would have been granted. We cannot say the finding is clearly erroneous and believe the court gave the problem proper consideration. He referred to petitioner's "full knowledge of the consequences" of his acts, and we feel this was in line with the test for certifying ". . . such child capable of knowing right from wrong, and to be held accountable for his acts . . ." 10 O.S.1971 § 1112(b); Sherfield v. State, 511 P.2d 598, 601 (Okl.Cr.).
 
 
 13
 Petitioner vigorously objects that jurisdictional problems bar any such procedure, that the Oklahoma rule is that any adult conviction during the age of juvenility without certification is void, and that the only State remedy would be to start the process anew, not by such a nunc pro tunc finding.
 
 
 14
 We disagree. The State cases relied on such as Wilson v. State,65 Okl.Cr. 10, 82 P.2d 308 do treat the State's failure to follow the statutory requirement as calling for invalidation of the conviction and a jurisdictional dilemma can be constructed out of reasoning from the cases. We feel, however, that in deciding these habeas cases and in fashioning a remedy as "law and justice require," 28 U.S.C.A. § 2243, see Carafas v. LaVallee,391 U.S. 234, 239, 88 S.Ct. 1556, 20 L.Ed.2d 554, we can exercise restraint and need not grant such "drastic relief" as petitioner seeks for the denial of equal protection. See Kent v. United States, 383 U.S. 541, 565, 86 S.Ct. 1045, 16 L.Ed.2d 84. If the court is clearly convinced that the juvenile court would have certified the petitioner for treatment as an adult, we believe the essential justice and basic fairness standard of the Radcliff case is satisfied, without violence to the habeas remedy or State law.[6] This procedure is similar to that suggested in Kent v. United States, supra, 383 U.S. at 564-65, 86 S.Ct. 1045. See also Woodall v. Pettibone, 465 F.2d 49, 52-53 (4th Cir.), cert. denied, 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044; Brown v. Cox, 481 F.2d 622, 627 (4th Cir.), cert. denied, 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 761; Powell v. Hocker, 453 F.2d 652 (9th Cir.), overruled on other grounds, 9 Cir., 498 F.2d 579; Kemplen v. Maryland, 428 F.2d 169, 178 (4th Cir.); Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104; but see Mordecai v. United States, 137 U.S.App.D.C. 198, 421 F.2d 1133, 1135, 1138-39, cert. denied, 397 U.S. 977, 90 S.Ct. 1098, 25 L.Ed.2d 272; and Wilson v. Reagan, 354 F.2d 45, 46 (9th Cir.). Where the judge in the federal habeas case is clearly convinced that certification would have been made in the State court, the conviction need not be set aside in these circumstances.
 
 
 15
 Petitioner Garner maintains that the Lamb and Radcliff opinions themselves rejected the possible procedure of a hearing to determine whether he would have been certified. (Brief of Appellant Garner, 2-4). While the opinions did not discuss the possibilities of such procedures in Radcliff,[7] we did affirm the granting of a writ to Stringfield and its practical effect was to rule out the further hearings we are providing for in these cases. However, in reviewing these problems again, en banc, we feel it proper to consider the advisability of such hearings which can provide for a fair disposition without summarily granting the writs.
 
 
 16
 Further, Garner argues that in any event no procedure for certification or for a determination as was made in the district court is possible because the certification statute, 10 O.S.1971 § 1112(b), is void for vagueness. The statute essentially provides a standard for the court in its discretion to certify "such child capable of knowing right from wrong, and to be held accountable for his acts . . ." In Sherfield v. State, supra, 511 P.2d at 602, the same point was considered and rejected, and we agree. The statute is sufficiently clear under due process standards.
 
 
 17
 Petitioner Garner also claims error in the refusal of the trial court to grant a continuance so that he could obtain statistical data to support his claim that the juvenile certification statute was unconstitutional as applied. The argument essentially made the point that no girls had been certified over the 30 years when the discriminatory treatment existed and that these facts should be developed. (R. IV, 2-3 et seq.). Reference is also made to figures concerning Tulsa County appended to the briefs filed in Radcliff, supra. There was not, however, any persuasive showing to the trial court of probable proof to be developed to actually demonstrate any constitutional wrong. We find no abuse of discretion or error in the ruling of the court.
 
 
 18
 Lastly, Garner argues vigorously that a denial of equal protection also occurred in the admission of a confession by him contrary to 21 O.S.1971 § 1109(b). The statute essentially bars admission into evidence of any statement "gained by questioning a child" unless it is in the presence of the "child's parents, guardian, attorney or the legal custodian of the child." Garner says that since no 17 year old girl could have had the confession used against her, a 17 year old boy was entitled to the same treatment. The statute, however, made no such unequal provision at the time of Garner's offense and trial. Despite the sexual disparity in 10 O.S.1971 §§ 1101(a) and 1101A in defining "delinquent child", the definition of "child" generally appeared uniform "any person under the age of eighteen (18) years." 10 O.S.1971 § 1101A (emphasis added), and any error of State law in applying the statute would not be cognizable in a federal habeas suit. Pierce v. Page, 362 F.2d 534, 535 (10th Cir.). However, Garner's counsel points out that a State three-judge district court panel held § 1101A invalid in November 1971, prior to Garner's January, 1972 trial. The upshot was that in the county of his trial, Garner may have been subject to an age-sex disparity in the application of the statute barring admission of children's confessions not made under prescribed conditions.[8]
 
 
 19
 Nevertheless we agree with the federal district court that exhaustion of State remedies has not occurred on this claim. There is no showing that Garner asserted in his direct appeal or his State post-conviction case that § 1109(a) barred admission of the confession or that any claim was made of denial of equal protection in its admission.8a Thus no equal protection claim was made in the State court which is substantially equivalent to that made here. See Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438; Pitchess v. Davis, 421 U.S. 482, 487, 95 S.Ct. 1748, 44 L.Ed.2d 317. Moreover we feel that the State courts can best determine whether an actual age-sex discrimination occurred in these circumstances.8b
 
 
 20
 In sum, we feel that the district court properly considered the equal protection claim and find no error on any of the grounds argued. The record supports the court's finding that Garner would have been certified in any event for trial as an adult. We, therefore agree with the trial court's conclusion that the conviction in question should not be held invalid, and affirm the judgment in this case.
 
 No. 75-1593 Bromley v. Crisp
 No. 75-1968 Rutledge v. Sunderland
 
 21
 These cases involve questions flowing from pleas of guilty, along with common equal protection problems, and thus can conveniently be treated together.
 
 
 22
 In January, 1971, when he was 17 and represented by counsel, Rutledge pled guilty to two counts of grand larceny. This was an adult prosecution without certification for treatment as an adult. He was sentenced to two concurrent 2 1/2 year terms. In 1973, he was convicted after a not guilty plea of possession of a controlled substance after former conviction of a felony. He received the minimum sentence for this conviction 10 years. This conviction was affirmed on direct appeal. Rutledge v. State, 527 P.2d 1373 (Okl.Cr.).
 
 
 23
 Rutledge unsuccessfully sought post-conviction relief in the State district court, claiming violation of the Equal Protection Clause in the use of the 1971 conviction to premise the 1973 recidivist convictions. He then asserted his constitutional claim in this federal habeas action where relief was denied on the ground that his pleas of guilty had waived earlier defects in the State court proceedings. This appeal followed.
 
 
 24
 The Bromley case has a similar background. In 1972, while he was 17 and represented by counsel, Bromley pled guilty to a charge of assault and battery with a dangerous weapon. He received a suspended sentence. In March, 1974, he pled guilty to two charges of second degree burglary after former conviction of a felony, and to one charge of robbery with firearms after former conviction of a felony. He received three concurrent 22-year sentences. The former conviction premising all three of these recidivist convictions was the assault and battery conviction in 1972 when he was prosecuted as an adult without certification for such treatment.
 
 
 25
 After the 1974 convictions, Bromley unsuccessfully sought post-conviction relief in the State courts, asserting that the former enhancing conviction was invalid under the Lamb equal protection holding. He then brought this federal habeas suit where his constitutional claim was rejected on the ground that the plea of guilty had waived the prior defects alleged. This appeal followed.
 
 
 26
 The State argues that the rulings were correct, saying that the guilty plea prevents assertion of claims of earlier deprivation of constitutional rights. It relies on Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785, and the more recent decision in Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235, as well as Acuna v. Baker, 418 F.2d 639 (10th Cir.) (en banc) and similar cases in our court.
 
 
 27
 The Brady trilogy has been said to have "announced the general rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings." Lefkowitz v. Newsome, 420 U.S. 283, 288, 95 S.Ct. 886, 889, 43 L.Ed.2d 196; see also Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235. Our holdings in Claunch v. Page, 427 F.2d 841, 843 (10th Cir.), cert. denied, 401 U.S. 957, 91 S.Ct. 982, 28 L.Ed.2d 241; Acuna v. Baker, supra, 418 F.2d at 640, and Salazar v. Rodriguez, 371 F.2d 726 (10th Cir.), were to the same general effect. On the other hand, petitioners point to Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, and Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195, and maintain that the preclusive effects of guilty pleas do not apply where the constitutional claims go "to the very power of the State to bring the defendant into court to answer the charge brought against him." Blackledge, supra 417 U.S. at 30, 94 S.Ct. at 2103. And we note that the Court has said that Tollett, Brady and McMann do not "stand for the proposition that counseled guilty pleas inevitably 'waive' all antecedent constitutional violations." Menna, supra 423 U.S. at 62 n.2, 96 S.Ct. at 242.
 
 
 28
 We feel that disposition of these conflicting arguments is not required in these appeals. The petitioners make a narrower contention that their specific equal protections claims were considered on the merits by the Oklahoma courts despite the guilty pleas and that, in such event, the federal court in a habeas corpus suit should likewise entertain the claims. We must agree that this position has merit. In Lefkowitz v. Newsome, supra, 420 U.S. at 292 n.9, 95 S.Ct. at 891,[9] a guilty plea case, the Court admonished that:In Fay v. Noia, supra the Court held that a federal habeas judge may deny relief to an applicant who has deliberately bypassed the orderly state-court procedures for reviewing his constitutional claim. But the Court also held that if the state courts have entertained the federal constitutional claims on the merits in a subsequent proceeding, notwithstanding the deliberate bypass, the federal courts have no discretion to deny the applicant habeas relief to which he is otherwise entitled. It would seem to follow necessarily that when there is no bypass of state appellate procedures, deliberate or otherwise, and the state courts entertained the federal claims on the merits, a federal habeas corpus court must also determine the merits of the applicant's claim. (Emphasis added) (citations omitted).
 
 
 29
 We have a further reminder that constitutional claims are not to be rejected in federal habeas suits on grounds of waiver where the state courts have considered the claims on their merits: "In a case where the state courts have declined to impose a waiver but have considered the merits of the prisoner's claim, different considerations would, of course, be applicable. See Lefkowitz v. Newsome, 420 U.S. 283 (95 S.Ct. 886, 43 L.Ed.2d 196)." Francis v. Henderson, 425 U.S. 536, 542 n.5, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149. The Court recently applied this rule for entertaining constitutional claims on the merits in federal habeas suits where the state courts have thus considered them in Newman v. Henderson, 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791, vacating a judgment and remanding a Fifth Circuit case for further consideration in light of the statements from the Lefkowitz and Francis cases we have quoted above.[10] See also Estelle v. Williams, 425 U.S. 501, 525, 96 S.Ct. 1691, 48 L.Ed.2d 126 (dissenting opinion of Mr. Justice Brennan).
 
 
 30
 The facts on the State court treatment of the equal protection claims of these petitioners are not in dispute. In the direct appeal from Rutledge's recidivist convictions, the court considered and rejected the constitutional claim on its merits. See Rutledge v. State, 527 P.2d 1373, 1375 (Okl.Cr.). Rutledge also brought a state post-conviction proceeding in which his claim was rejected on the authority of the adverse ruling in his direct appeal. In Bromley's federal habeas case he alleged earlier rejection of his claim on the basis of Freshour v. Turner, 496 P.2d 389 (Okl.Cr.) by the State district and appellate courts. The order of the Court of Criminal Appeals, No. PC-74-474, confirms that the disposition of the constitutional claim was on the merits. In these circumstances we feel that the constitutional claims of both petitioners must likewise be considered on their merits in these federal habeas suits, despite the guilty pleas. Lefkowtiz, supra 420 U.S. at 292 n.9, 95 S.Ct. 886; see Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837.
 
 
 31
 Accordingly, the judgments in Nos. 75-1593 and 75-1968 are vacated. These cases are remanded for further proceedings in accordance with the procedure outlined in the Garner case, note 6, supra. As there discussed, the trial court should withhold judgment for a reasonable time to permit a State court determination to be made as to whether petitioners would have been certified, or failing that, the federal court may itself make a determination as to whether or not it is clearly convinced that certification would have occurred, and make proper disposition of the petitions thereafter.No. 76-1043 Hanley v. Faulkner
 
 No. 76-1044 Wilson v. Faulkner
 
 32
 These cases have a somewhat complicated background but for our purposes the facts can be simplified as follows:
 
 
 33
 In 1968 Hanley, then 16, pled guilty to two counts of rape and one of robbery with firearms. He was sentenced to two 15-year terms and one 20-year term. In 1970 Wilson, then 17, pled guilty to possession of narcotics, obtaining property by false pretenses, second degree burglary, and two counts of robbery with firearms. He received sentences of 7, 3, 5, 25 and 25 years, respectively, to be served concurrently. Both petitioners were prosecuted as adults without certification for such treatment.
 
 
 34
 After temporary release from custody in 1975, by State court orders following our Radcliff decision, both Hanley and Wilson were taken into State custody again after the decision in Dean v. Crisp, 536 P.2d 961 (Okl.Cr.). Both petitioners then brought these habeas suits in the Northern District of Oklahoma where relief was denied. These appeals followed.[11]
 
 
 35
 In denying the petitions, the trial court reasoned that the State court's interpretation on State law jurisdictional points was binding on the federal court; that Schaffer v. Green, 496 P.2d 375 (Okl.Cr.) had held that the void existing after the Lamb decision invalidated 10 O.S.Supp.1969, § 1101(a) was filled by 21 O.S. § 152 (originally enacted in 1910); and that under the resulting state of the law, as so interpreted, all persons over the age of 14 were within the jurisdiction of the State courts for prosecution as adults, without regard to sex. Hence, it was held that relief should be denied.
 
 
 36
 We cannot agree. Without doubt, the State courts are fully empowered to construe their statutes and to determine rules of State law and we must accept those determinations. However, we are faced with a substantial federal question as to whether at the time the challenged convictions were imposed there was a violation of the Equal Protection Clause by reason of disparity in treatment of male and female youths. The reality of State law as it then existed and was applied controls, and not an ex post facto restructuring of the statutes. We are persuaded by the reasoning of the district court in No. 75-1830, Garner v. State of Oklahoma :
 
 
 37
 The fact is, and it is undeniable, that at the time of petitioner's conviction Oklahoma did accord to girls the favored treatment. This petitioner was discriminated against by the State. There was a denial by the State of equal protection to the petitioner, and the taint of discrimination is not removed from the conviction by the retrospective view that he received all the protection he was entitled to under a proper interpretation of constitutionally sound Oklahoma law. The fallacy of such view lies in its disregard of the federal constitutional reality. He was entitled to equal protection. He was entitled to the same treatment as the favored class. In short, it was the treatment that he received which flaws the proceedings.
 
 
 38
 The State clearly may make the necessary statutory repairs or judicial interpretation of State law to remove unconstitutional inequities after an equal protection violation is recognized. See Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 463 n.24, 50 L.Ed.2d 397; Stanton v. Stanton, 421 U.S. 7, 17-18, 95 S.Ct. 1373, 43 L.Ed.2d 688. Nevertheless, it remains a federal question, which is now before us, whether the past convictions were afflicted by a denial of equal protection so that they cannot stand. See Chapman v. California, 386 U.S. 18, 21, 87 S.Ct. 824, 17 L.Ed.2d 705. We must decide this question on the basis of the laws actually applied when the challenged convictions occurred. Cf. Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 30 L.Ed. 220. In view of the fact that there was actual discriminatory treatment under the statutes then in force, we hold that there was a violation of the Equal Protection Clause.
 
 
 39
 In Hanley's case, 10 O.S.1961, § 101 is involved, and not the 1969-1972 statute held invalid in Lamb. Nevertheless, we see no justification for a difference in result, and the State offers none. In fact, the Oklahoma Court held that similar statutes on the books from 1941 to 1972 were invalid due to the sexually discriminatory provisions. Dean v. Crisp, supra, 536 P.2d at 964. We must agree and conclude that the discriminatory 1961 statute applicable in Hanley's case caused a denial of equal protection to him.
 
 
 40
 Accordingly these judgments must be vacated as to petitioners Hanley and Wilson, and the cases are remanded to the trial court for further proceedings as outlined in Bromley No. 75-1593, Rutledge No. 75-1968, and Garner No. 75-1830, note 6, supra, with respect to the challenged 1968 and 1970 convictions.
 
 No. 76-1043 Killion v. Faulkner
 
 41
 In 1959, at age 17, Billie Jay Killion was convicted of murder and received a life sentence. This was an adult prosecution, without certification for treatment as an adult. After our Radcliff decision, Killion unsuccessfully sought post-conviction relief in the State courts, challenging his conviction under the Lamb and Radcliff decisions.
 
 
 42
 Petitioner Killion then joined Hanley in bringing a habeas proceeding in the Northern District of Oklahoma. As noted above, the trial court denied relief on that petition on the basis that it was bound by the interpretation of state law in Schaffer v. Green, 496 P.2d 375 (Okl.Cr.). The reasoning was that in view of the State Court's interpretation that older statutes without any inequity as to sex (21 O.S. § 152), see Schaffer v. Green, supra at 377, applied to fill the void after the Lamb ruling, there was no equal protection problem. Killion appealed.
 
 
 43
 We discuss his case separately because of procedural differences we should note. Killion was tried under statutes with special population provisions resulting in the creation of juvenile courts in Tulsa and Oklahoma Counties. See 20 O.S.1951 § 771 et seq. Parts of the special statute would have treated both males and females as juveniles until the age of 18, therefore making certification of both groups necessary before prosecution as adults. See 20 O.S.1951 §§ 772-74. However before Killion was tried, these sections of the statute were held invalid as a "special law" under the State constitution. Anderson v. Walker, 333 P.2d 570, 575 (Okl.); Killion v. Walker, 334 P.2d 454, 455 (Okl.Cr.). The result was that the general laws, 10 O.S.1951 § 101, applied in Killion's case and this section contained a provision with the fatal inequality in treatment of the sexes.
 
 
 44
 Thus the same basic equal protection problem is involved, although here the 1951 statute is in question, not the 1969-1972 statute invalidated in Lamb. Again we see no reason why there should be a difference in result. As noted above, the Oklahoma Court held the statutes on the books from 1941 until 1972 were invalid due to sexually discriminatory provisions. Dean v. Crisp, supra, 536 P.2d at 964. We conclude that the discriminatory 1951 statute, applicable in Killion's case, caused a denial of equal protection to him.
 
 
 45
 Furthermore, as discussed in treating the Hanley and Wilson cases, we cannot agree that there was no denial of equal protection on the theory that an earlier, non-discriminatory statute filled the void of the invalid one. The reality of the law as it existed and applied controls, under which the denial of equal protection is clear.
 
 
 46
 For reasons stated, we hold that there was a denial of equal protection in the proceeding where Killion's conviction was obtained. Accordingly, the trial court's judgment is vacated as to Killion and the case is remanded for further proceedings as in Bromley No. 75-1593, Rutledge No. 75-1968, and Garner No. 75-1830, note 6, supra. With the burden of proof and persuasion resting on the State to demonstrate that such certification would have occurred, we feel there is sufficient protection for the petitioner. We are aware of the difficulty of the determination whether certification would have been made in 1959 before Killion's trial. However, for reasons given in note 6, supra, we feel this is the best solution in a difficult situation, balancing the interests of the State and the individual.
 
 No. 75-1988 Stringfield v. Grider
 
 47
 In March, 1971, petitioner Stringfield, who was then 17, pled guilty to the charge of second degree burglary. The imposition of sentence was deferred for two years under Oklahoma's "deferred sentencing" law then in effect. 22 O.S.1971 § 991a. However, in August, 1971, the imposition of his sentence was "accelerated" and he was sentenced to five years' imprisonment. He then unsuccessfully sought review of the conviction on his guilty plea in the Oklahoma Court of Criminal Appeals. A subsequent application for post-conviction relief in the State district court was denied.
 
 
 48
 Stringfield then sought federal habeas relief. His petition was granted by the district judge who held that our decision in Lamb v. Brown should be applied retroactively. The court concluded that petitioner's conviction was "void" and that the writ should be granted. However, since Stringfield was then out on parole, the court stayed formal issuance of the writ pending the disposition of the State's appeal. The appeal was decided in Radcliff v. Anderson, supra, which affirmed the district court's judgment. 509 F.2d at 1096.
 
 
 49
 After issuance of the mandate the district court entered a "Final Judgment on Remand." The order provided, inter alia, that the journal entry in the Lamb case would be adopted; that the purported felony conviction of Stringfield was "vacated, quashed, set aside, and held for naught, with prejudice"; that a writ of habeas corpus "do issue"; and that all public, official and quasi-official records relating to the conviction be expunged. This appeal followed.
 
 
 50
 The State urges several grounds for reversal, but a preliminary issue must be considered first. Petitioner contends that principles of res judicata and the law of the case bar consideration of the State's claims of error in granting the writ. While we are not persuaded by the res judicata argument in this habeas case, see Fay v. Noia, 372 U.S. 391, 423, 83 S.Ct. 822, 9 L.Ed.2d 837, we are convinced that we should apply the doctrine of the law of the case.
 
 
 51
 " In the absence of statute the phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Messenger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152. The practice is not rigidly binding, but generally an appellate court will not depart from a rule of law established on an earlier appeal in deciding the same issues, except for cogent reasons. United States v. Fernandez, 506 F.2d 1200, 1203-04 (2d Cir.); 1B Moore's Federal Practice P 0.404(10) at 573-74. The rule has been applied in habeas cases. E. g., McClellan v. Heritage, 234 F.Supp. 219, 220 (N.D.Ga.), aff'd 337 F.2d 239 (5th Cir.).
 
 
 52
 It is clear from the disposition in the earlier appeal that we affirmed the grant of the writ to Stringfield and the determination that his conviction was void, which is the law of the case. No persuasive reason is advanced why we should alter the prior judgment. No supervening events, such as a change of law, have been demonstrated. See Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298, 41 L.Ed.2d 109. It is true that this disposition differs from that in the other cases being decided today in that we allow the determination to be made as to whether the petitioners in those cases would have been certified, with the possibility that their convictions may stand. Nevertheless, Stringfield prevailed on the earlier appeal and we then were not persuaded to modify the district court's order granting the writ. The circumstances surrounding his conviction of second degree burglary, from which he is on parole, do not convince us now to reopen the judgment in this respect. Therefore, we leave undisturbed the affirmance of the grant of the writ and the holding that the conviction was void.
 
 
 53
 The State further contends that the district court erred in not withholding the issuance of the writ to permit the State to retry Stringfield. It is true that we have held it an abuse of discretion to order immediate release when constitutional defects may be remedied by further proceedings in the criminal case. Gurule v. Turner, 461 F.2d 1083, 1084 (10th Cir.). In Stringfield's case, however, we affirmed the ruling that he was entitled to a writ and gave no directions for withholding the writ, as we have done in other cases. E. g., Booker v. Phillips, 418 F.2d 424, 427 (10th Cir.), cert. denied, 399 U.S. 910, 90 S.Ct. 2194, 26 L.Ed.2d 564; Lesley v. Oklahoma, 407 F.2d 543, 544 (10th Cir.). Under our judgment affirming the grant of the writ and our mandate, the district court did not err in the issuance of the formal writ.[12]
 
 
 54
 Further, the State claims error in the district court's order that the records concerning Stringfield's prosecution be expunged. It says the order was an abuse of discretion and was entered without a proper hearing.
 
 
 55
 At the outset we note that this portion of the judgment is on a different footing than the part granting the writ. As stated earlier, we view the habeas relief itself as properly granted under the mandate in the first appeal. The order to expunge the records, however, was additional relief not within the terms of the mandate. We do not say that it was improper to consider such relief in this habeas action, but the claim for such relief requires further examination.
 
 
 56
 We have recognized that the power to order the expunging of such records exists. See United States v. Linn, 513 F.2d 925, 927 (10th Cir.). It has been exercised to remove the effects of unconstitutional prosecution. United States v. McLeod, 385 F.2d 734, 750 (5th Cir.). Nevertheless, the power is a narrow one, reserved for extreme cases. See United States v. Linn,supra at 927; United States v. Seasholtz, 376 F.Supp. 1288, 1289 (N.D.Okl.). There should be a balancing of the interests of the State in maintaining records for law enforcement against the individual's rights.
 
 
 57
 From the terms of the judgment, we find it clear that the district court ordered expungement and other relief for Stringfield because the court felt bound to follow the judgment in Lamb. This was understandable in that the en banc order denying rehearing in Radcliff said that "(b)asic fairness and essential justice demand that these petitioners be treated no differently than the petitioner in Lamb. " 509 F.2d at 1096.
 
 
 58
 However, we do not feel that this carried beyond the basic habeas relief itself. We feel that as to the further relief of ordering expungement, the court should balance the equities and exercise discretion, which the district court apparently did not do. Accordingly, we vacate that portion of the judgment and remand for further proceedings on the request for expungement of the records.
 
 
 59
 Lastly, the State complains that the court erred in providing in the judgment that Stringfield's prior conviction was "vacated, quashed, set aside and held for naught, with prejudice." The "with prejudice" provision is challenged as error for barring the right to retry Stringfield. We must agree. While there are cases where a ruling in a habeas suit may bar further prosecution, we must agree that holding a conviction invalid and granting the writ do not generally bar retrial on the original charge. See Blackledge v. Perry, 417 U.S. 21, 31 n.8, 94 S.Ct. 2098, 40 L.Ed.2d 628.[13] Therefore, the provision that the conviction was set aside "with prejudice" must also be vacated. This judgment is therefore affirmed in part, vacated in part as stated, and the case is remanded for further proceedings.
 
 
 60
 It is so ordered.
 
 
 61
 HILL, Circuit Judge, dissents for the reasons stated by Judge Seth and Judge Barrett.
 
 SETH, Circuit Judge, dissenting:
 
 62
 I must dissent from the majority, and adhere instead to the decision of the panel of this court in Lamb v. Brown, 456 F.2d 18 (10th Cir.), on the prospective application of that decision as a proper judicial determination.
 
 BARRETT, Circuit Judge, dissenting:
 
 63
 I respectfully dissent. In my view we should re-adopt the statement contained in our ruling in Lamb v. Brown, 456 F.2d 18 (10th Cir.1972), i.e., that the voiding of 10 Okl.St.Ann. § 1101 on constitutional grounds shall not be applied retroactively. I would apply the same ruling to other Oklahoma statutes challenged in these consolidated cases based upon Fourteenth Amendment Equal Protection grounds. The reasons therefor have been detailed in dissenting opinions filed by Judge Seth and this writer in Radcliff v. Anderson, 509 F.2d 1093 (10th Cir.1974), cert. denied, 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975).
 
 
 64
 In my judgment, non-retroactive application is on "all fours" with the considerations determinative of retroactive versus prospective application of a new constitutional ruling, i.e.: (a) the purpose to be served by the new rule; (b) the extent of reliance placed on the old rule; and (c) the effect on the administration of justice. In respect to the latter consideration, I believe that our Radcliff decision has created unjustified havoc and consequences upon the administration of Oklahoma's criminal laws spanning a period in excess of thirty years, notwithstanding that no challenges have ever been raised nor are they before us now involving the accuracy and fairness involved in the fact-finding processes, the procedural validity of the proceedings had, or the guilt of the male offenders.
 
 
 
 *
 Petitions for rehearing by respondent State of Oklahoma officials, and by the habeas petitioners except petitioner Stringfield (No. 75-1988), who did not petition for rehearing, were denied by order of the Court on September 2, 1977. Judge Hill, Seth and Barrett voted to grant the petition of the respondent State of Oklahoma officials
 
 
 [1]
 Dean v. Crisp overruled that part of the holdings in Schaffer and Freshour which had made some earlier non-discriminatory statutes applicable to fill the "void" following the Lamb opinion. The Dean opinion also recognized the invalidity of the discriminatory statutes in force since 1941. It held, however, that these statutes were supplanted by the 1909 statute which defined a "delinquent child" as any child under 16 violating any federal or state law, or any city or village ordinance. See 536 P.2d at 964
 
 
 [2]
 We note that the Seventh Circuit has subsequently disagreed with our retroactivity holding. United States ex rel. Watson v. Housewright, 528 F.2d 259. The State here requests that we re-examine and alter our Radcliff holding. (Brief of Respondents-Appellees, 37-38). However, we remain convinced of its correctness
 
 
 [3]
 See the discussion of the State court interpretations of Oklahoma law subsequent to the Lamb decision in No. 76-1043 (Hanley) and No. 76-1044 (Wilson), infra
 
 
 [4]
 The Radcliff opinion decided consolidated appeals of both Stringfield and Radcliff. It affirmed a ruling that Stringfield was entitled to a writ. The judgment finally entered granted a writ and other relief and the respondent warden has appealed
 
 
 [5]
 We recognize that these February, 1972 pleas occurred after the January 6, 1972, trial and that a certification would have been considered before that time. However we feel the trial court properly took all these circumstances about the closely related offenses and the acceleration proceeding into account. If a certification proceeding had occurred it is reasonable to assume that substantially all of these circumstances surrounding the other offenses would have been developed for the judge considering certification
 
 
 [6]
 In this case the hearing has been held by the district court and the proper determination has been made, which we feel is not in error. In these circumstances we are satisfied we should affirm
 In cases where such a determination has not been made but is necessary to dispose of a federal habeas petition, we feel it preferable that the district court withhold judgment for a reasonable time to permit the determination to be made in the State courts. See Kemplen v. Maryland, supra, 428 F.2d at 178; Booker v. Phillips, 418 F.2d 424, 427 (10th Cir.), cert. denied, 399 U.S. 910, 90 S.Ct. 2194, 26 L.Ed.2d 564. If the State obtains in the Oklahoma courts a determination that certification would have occurred, then on a showing of such determination, the federal district court should deny the writ; if the State court finding is otherwise, the writ should issue. Further, failing a State court ruling as to whether petitioner would have been certified, then the federal district court may have the hearing and make the ruling as to whether or not the court is clearly convinced that the petitioner would have been certified for trial as an adult, and then make proper disposition.
 We recognize the fact that the determinations whether certifications would have been made will, in some of these cases decided today, relate to circumstances a few or quite a number of years back. See Pate v. Robinson, 383 U.S. 375, 387, 86 S.Ct. 836, 15 L.Ed.2d 815. However, the burden of proof and persuasion will rest on the State. The court can take into account all doubts that arise, and any weakness of proof, because of the passage of time as factors against the State. This will afford substantial protection to the petitioners from the fact that the determinations will concern circumstances in earlier years.
 
 
 [7]
 In Judge Seth's dissent we note the statement that "(i)t is still an unknown factor and ignored by the majority whether the juvenile court would nevertheless have certified these or many others of the many offenders as adults." 509 F.2d at 1099
 
 
 [8]
 See Opinion of the Judges, No. 185000, District Court of Oklahoma County (unpublished). This opinion held § 1101A (defining child as any person under 18) invalid under the State constitutional provision on subject matter and titles of legislative acts, as did Schaffer v. Green, 496 P.2d 375 (Okl.Cr.), two months after Garner's trial
 We cannot be sure, however, that an actual age-sex discrimination was practiced at the time of Garner's trial under the § 1109(a) restriction on use of children's confessions. The three-judge opinion decided the question whether males 16 and 17 had to be certified for adult trial and had limiting language on the scope of its ruling on the unconstitutionality of § 1101A. It is not clear that this ruling was applied to the definition of child for the purposes of § 1109(a).
 8a The claim of denial of equal protection in admission of the confession was not made in Garner's direct appeal or State post-conviction case. In Garner's post-conviction case he directed an equal protection claim solely at the disparity of certification ages. In his direct appeal the confession's admission was challenged, but not under § 1109(a) nor as a denial of equal protection. The challenge made to the confession was rejected on the ground that Garner made an understanding waiver of his rights. See 500 P.2d at 1341-42.
 8b Garner argues that exhaustion of State processes should not be required because they would be futile in view of Dean v. Crisp, supra, inter alia. However, we find no Oklahoma case dealing with the § 1109(a) confession statute and an equal protection claim such as Garner's. In view of the uncertainties clouding the problem, we cannot agree that State processes would clearly be unavailing. See Wade v. Mayo, 334 U.S. 672, 679, 68 S.Ct. 1270, 92 L.Ed. 1647.
 
 
 [9]
 The Court held in Lefkowitz, supra at 293, 95 S.Ct. at 891, that:
 . . . when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding.
 Because of the particular facts before us in the Bromley and Rutledge cases, we need not determine whether the Oklahoma rule on consideration of such claims after guilty pleas comes within this holding, as petitioners argue. Compare Ex parte Brown, 43 Okl.Cr. 339, 278 P. 671 with McFarlin v. State, 554 P.2d 56, 62 (Okl.Cr.). Our disposition on the guilty plea questions in these cases is made instead on the basis of the fact that the constitutional claims in these very cases were considered on the merits by the State courts.
 
 
 [10]
 Francis and Newman were cases which the Fifth Circuit had considered together, applying the waiver rule of Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216, in both of the habeas appeals. See Newman v. Henderson, 5 Cir., 496 F.2d 896, 898-99. In the Supreme Court the result was that where Francis had not received consideration of his constitutional claim on the merits by the state courts, the Fifth Circuit's ruling was affirmed. 423 U.S. at 542, 96 S.Ct. 1708. But where the merits of Newman's claim had been ruled on by the state court, the judgment was vacated and the case remanded. 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791. Disposition of the constitutional claim on the merits followed in the Court of Appeals. See Newman v. Henderson, 539 F.2d 502, 504 (5th Cir.)
 
 
 [11]
 Although pleas of guilty were entered in these cases, the State court considered the equal protection claim of both petitioners on the merits as in the Bromley and Rutledge cases. Hence we must reject any argument for affirmance based on the theory that the guilty pleas preclude assertion of the equal protection claim
 
 
 [12]
 As noted earlier, the district court did stay formal issuance of the writ pending the State's first appeal in Stringfield's case. However, the stay order made provision for a stay only until our disposition of that appeal. The record contains no indication that the district court or this court, at the time of our decision of the first appeal, contemplated that issuance of the writ would be further delayed
 
 
 [13]
 We do not, of course, intimate any view as to whether other rules of state law may be an impediment to a retrial