**GOVERNMENT OF THE VIRGIN ISLANDS IN THE INTEREST OF: EVAN S.**

Fam/Juv No. 129-1978

**GOVERNMENT OF THE VIRGIN ISLANDS IN THE INTEREST OF: WILLIAM B.**

Fam/Juv No. 130-1978

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

February 28, 1979

LEONARD B. FRANCIS, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for Government of the Virgin Islands*

ALAN D. SMITH, ESQ., Territorial Public Defender, St. Thomas, V.I., *for Evan S.*

DON C. MILLS, ESQ., St. Thomas, V.I., for *William B.*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

██ This matter is before the court on William B.'s and

Evan S.'s motions to suppress evidence obtained in violation of the Fourth Amendment[1] and on William B.'s motion to suppress statements and admissions obtained in violation of the Fifth Amendment.[2] A hearing on the motion was had on November 29, 1978, at the close of which the parties were requested to file memoranda of law. This having been accomplished, the matter is now ripe for disposition.

The minors are charged with stealing a motorcycle valued at more than $100, grand larceny in violation of 14 V.I.C. § 1083. The testimony of Officer Melbourne Williams is that on the day of the alleged theft he and Officer Eddie Wheatley[3] received a radio dispatch that two individuals[4] were seen riding a motorcycle without headgear in the Lindbergh Bay area.[5] The officers proceeded to that area and shortly thereafter observed the two minors walking. There was no motorcycle in sight. One of the youths, William B., had a motorcycle helmet under his arm; the other had nothing in his hands. The officers pulled their police car abreast of the youths, stopped them and began questioning them. Officer Wheatley asked Evan S. something to the effect of, "where is the motorcycle that you were riding?"

---

[1] William B. did not make a written motion to suppress, nonetheless, counsel for William B. orally joined in Evan S.'s motion to suppress, participated in the suppression hearing and has submitted a memorandum of law in support of his position.

[2] The Fourth and Fifth Amendments to the U.S. Constitution are applicable to the Virgin Islands. § 3 Revised Organic Act of 1954, prec. 1 V.I.C. (1977 Supp.); 48 U.S.C.A. § 1561 (1978 Supp.).

[3] Officer Wheatley did not appear at the suppression hearing despite having having been served with a subpoena.

[4] On direct examination, in response to a question seeking to determine the "totality" of the radio dispatch, Officer Williams testified that the dispatch merely said that two "individuals" were seen riding the motorcycle without headgear. Later he testified that the dispatch had indicated that the riders were "minors". The court believes that the dispatch did not make any specific reference to "minors".

[5] This conduct would constitute a misdemeanor in violation of 20 V.I.C. § 465(e), which provides:

"(e) After July 1, 1968, it shall be unlawful for any person to operate or ride upon a motorcycle unless he wears a protective helmet, meeting specifications established by the Commissioner. Such helmet must be equipped with either a neck or a chin strap, and must be secured during operation of the motorcycle."

Officer Williams said Evan S. did not respond, but that William B. said that it was hidden in some bushes. Officer Wheatley then had William B. accompany him to the motorcycle while Officer Williams had Evan S. get into the police car. Later the boys were taken into custody.

The testimony also revealed that at the time of the encounter between the officers and the minors, the officers were unaware that a motorcycle had been reported missing. Moreover, the Government offered no testimony to establish that the radio dispatch provided a physical description of the minors, although certain distinguishing characteristics of the two youths were obvious.[6] In addition, Officer Williams candidly testified that he knew Evan S. from a previous case and that he was more concerned about questioning Evan S. about that case than about the information he received from the radio dispatch.

The question before the court is whether the above encounter constituted an illegal stop and seizure within the meaning of the Fourth Amendment. Assuming that it was not, there is the additional question of whether William B.'s right to Miranda warnings was violated. Miranda v. Arizona, 384 U.S. 436 (1966). The court concludes that the initial stop was tainted with illegality and that under the doctrine of Wong Sun v. United States, 371 U.S. 471 (1963), all evidence obtained as a result of the unlawful stop must be suppressed.

The Government concedes that the officers did not have probable cause to arrest the minors at the time they were questioned at the side of the road. The Government, however, argues that the police may, under sufficiently suspicious circumstances, momentarily detain, stop or seize a person for an "on the scene investigation" on less than probable cause, and that such circumstances existed here.

---

[6] For example, one minor was white while the other was black, and the latter was considerably bigger than his companion.

Consequently, the Government concludes that if the police had the right to stop the minors, it was proper to question them about the cycle, learn of its whereabouts and seize it.

██ It is clear that the police action here amounted to a seizure of the minors' persons within the meaning of the Fourth Amendment as interpreted by Terry v. Ohio, 392 U.S. 1 (1966). Although no search was performed or physical evidence seized from the youths at the time of the stop,

[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. . . . "[W]henever a police officer accosts an individual and restrains his freedom to walk away he has 'seized' that person," . . . and the Fourth Amendment requires that the seizure be "reasonable". (Citations omitted.)

United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975), quoting Terry, supra, 392 U.S. at 16;[7] see also United States v. Nicholas, 488 F.2d 622 (8th Cir. 1971).

██ ██ To justify stopping any individual, a police officer "must be able to point to the specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. Terry v. Ohio, supra, 392 U.S. at 21. Consequently, as the Government argues, under sufficiently suspicious circumstances a person may be stopped and detained. In Terry, for example, the acts of

---

[7] United States v. Brignoni-Ponce, supra, was concerned with the authority of the Immigration and Naturalization Service to make arrests under section 287(a)(1) and (2) of the Immigration and Nationality Act, 8 U.S.C. § 1357(a)(1) and (2). The sole issue before the court was "whether a roving patrol may stop a vehicle in an area near the border and question its occupants when the only ground for suspicion is that the occupants appear to be of Mexican ancestry." Brignoni-Ponce, supra, 422 U.S. at 876. Thus, while it might be argued that Brignoni-Ponce should be limited to seizures of aliens, see Lee, Shan Gan v. Immigration & Naturalization Service, No. 77-2265 (3rd Cir., January 4, 1979); Illinois Migrant Council v. Pilliod, 548 F.2d 715 (7th Cir. 1977) (order entered upon rehearing in banc), modifying 540 F.2d 1062 (7th Cir. 1976); Ojeda-Vinales v. Immigration & Naturalization Service, 523 F.2d 286 (2d Cir. 1975), this court believes that the principles enunciated in Brignoni-Ponce have a far greater application. See, e.g., Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330 (1977); United States v. Wylie, 569 F.2d 62 (D.C. Cir. 1977).

the accused were observed by a police officer and were found sufficiently suspicious to warrant a stop.[8] In Adams v. Williams, 407 U.S. 143 (1972), the Supreme Court held that even an informant's tip could carry "enough indicia of reliability", id. at 147, to provide reasonable grounds for a limited Fourth Amendment stop.[9] However, the court

---

[8] The specific and articulable facts that were found to justify the stop in Terry were:

1. A police officer was on patrol in plain clothes in downtown Cleveland at approximately 2:30 p.m.
2. The officer's attention was attracted to two men standing on a corner, who, the officer said, based on his 39 years as a police officer, "didn't look right to me".
3. As a result, the officer stationed himself in the entrance to a store 300 to 400 feet away from the men.
4. He saw one of the men leave and walk past some stores. The man paused, looked in a store window, then walked a short distance, turned around and walked back toward the corner, pausing once again to look in the window of the store. The man then rejoined his companion at the corner and they conferred briefly.
5. The second man then went through the same routine of walking past the store, peering in, walking on, turning back and returning to confer with his companion.
6. The two men repeated this alternately between five and six times each.
7. At one point, a third man appeared and engaged the other two in a brief conversation and then left.
8. The two men then resumed their measured pausing, peering and conferring.
9. After this had gone on for 10 to 12 minutes the two men walked off together following the path taken by the third man.
10. The officer followed the two and saw them stop in front of a store to talk with the same man.
11. The officer then approached the three, identified himself as an officer and asked for their names.
12. When the men "mumbled something", the officer grabbed Terry, spun him around and patted him down. Feeling a gun he reached inside the man's clothes to get the gun, but was unable to get it.
13. He then ordered all three men into a store, where he removed the gun from Terry, patted the other two men down for weapons and took a gun from one of the other two men.

[9] The specific and articulable facts that were found to justify the stop in Adams v. Williams were:

1. A police sergeant was alone on car patrol early in the morning in a high crime area.
2. At 2:15 a.m., a person *known to the officer* approached his cruiser and informed him that an individual seated in a nearby car was carrying narcotics and had a gun at his waist. This informant had provided the officer with information in the past.
3. The officer approached the vehicle to investigate, tapped on the car window, and asked the occupant to open the door.
4. Instead, the occupant rolled down the window. The officer then reached into the car and removed a fully loaded revolver from the occupant's waistband.
5. The gun had not been visible outside the car, but was in precisely the place indicated by the informant.

cautioned that "some tips, completely lacking in indicia of reliability . . . either warrant no police response or require further investigation before [there constitutionally may be] a forcible stop of a suspect." Id.

■■ Although a radio dispatch certainly is a reliable basis for actions by a police officer, in the present case there were no facts testified to by the officer to connect the two minors to the two individuals referred to in the dispatch. Otherwise stated, there were no specific and articulable facts that, taken together with rational inferences from those facts, gave rise to a reasonable suspicion that these minors were the object of the dispatch.[10]

The seizure of these two minors was the result of either a "generalized suspicion", a hunch or some other inarticulable suspicion of the police officers. The detention of any person, no matter how momentary, is not permitted on such a basis. See United States v. Nicholas, supra, 448 F.2d at 625; accord United States v. Montgomery, 561 F.2d 875, 879 (D.C. Cir. 1977); United States v. Shavers, supra, 524 F.2d at 1096 (8th Cir. 1975). Therefore, the police stop, without further investigation or more articulable facts, was unreasonable and in violation of the Fourth Amendment.[11]

---

[10] Merely the fact that the two were minors cannot establish a basis for the stop, especially in view of the court's finding that the dispatch referred to two "individuals" and not to two minors. Likewise, mere geographic proximity to the area where the alleged violation occurred is insufficient. See United States v. Shavers, 524 F.2d 1094 (8th Cir. 1975). The minors were walking along a public road during the daylight hours. Certainly nothing about those facts can give rise to any inference justifying a stop. There is nothing about such conduct that is either inherently suspicious or suspicious under the circumstances described. Moreover, the specific facts show that one of the minors had a helmet in his hand at the time he was stopped. This would militate against a rational inference that these two minors were the objects of the radio dispatch.

[11] Justice White, in his concurring opinion in Terry, briefly discussed the question of interrogation during an investigatory stop and said there was nothing to prevent police from addressing questions to anyone in the street. He added, however, that

"[a]bsent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me that the person may be briefly detained against his will while per-

186

■ In addition, this case involves minors 16 years of age and under. At this age, a minor

> no matter how sophisticated, . . . is not equal to the police in knowledge and understanding . . . and . . . is unable to know how to protect his own interests or how to get the benefits of his constitutional rights.
>
> . . . He cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions.

Gallegos v. Colorado, 370 U.S. 49, 54, reh. den., 370 U.S. 965 (1962). Because of a minor's age, special care in scrutinizing the record must be used, and, absent some showing to dispel a minor's apparent immaturity, he cannot be judged by the standards applicable to adults. Cf. Harley v. Ohio, 332 U.S. 596 (1948).

Several states have recognized the disparity between an adult's and a minor's awareness of constitutional rights. As a result, several courts have adopted a per se approach of excluding confessions unless it can be shown that the minor comprehended the full significance of his rights. See, e.g., Commonwealth v. Smith, 372 A.2d 797 (Pa. 1977); cf. In re Dino, 359 So.2d 586 (La. 1978); see also Mr. Justice Marshall's dissent from denial of certiorari in Little v. Arkansas, 435 U.S. 957 (1978).

■ Even though Evan S. and William B. may have been free to walk away and not answer any questions after the officers stopped them for questioning, there is nothing in the record to demonstrate that the minors were aware of police procedures or of their constitutional rights. Moreover, this court finds that the action of the officers was a sufficient

---

tinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest although it may alert the officer to the need for continued observation."

Terry v. Ohio, supra, 392 U.S. at 34. See also United States v. Montgomery, supra, 561 F.2d at 886. In this case, the court does not believe that there were "proper circumstances" for stopping and detaining the minors on the basis of Officer Williams' testimony.

showing of authority to constitute a restraint of the minors' freedom of movement. See Terry, supra, 392 U.S. at 16, 19, n. 16; cf. United States v. Nicholas, supra, 482 F.2d at 624. The court believes that regardless of how an adult would have perceived or understood the stop, these minors acted as if they had been "stopped" and "detained" by the officers and as if they were not free to leave. Cf. Miranda v. Arizona, supra.[12]

Accordingly, there was a "seizure" of the persons of the minors and the Government was obliged to show the specific and articulable facts and inferences necessary to justify the stop. This the Government failed to do. The testimony of Officer Williams failed to disclose any grounds that "reasonably warranted suspicion" that these two minors were violating 20 V.I.C. § 465(e). United States v. Brignoni-Ponce, supra, 422 U. S. at 884; cf. United States v. Brown, 436 F.2d 702, 725 (9th Cir. 1973). In fact, the real purpose of the stop, as Officer Williams testified, was to question Evan S. about some other case, and not to question him in response to the radio dispatch.[13]

---

[12] This court does not believe that the stopping of the minors in this case can be considered a "contact" as opposed to a stop as discussed in United States v. Wylie, supra, 569 F.2d at 67–68. This is particularly so in view of the fact that here we are concerned with minors as opposed to adults, who are unlikely, absent some showing, to know that they "may not be detained against their will or frisked, [and that t]hey may not be required to answer the officer's questions or in any way respond to the officer if they choose not to do so." Id. at 67, n. 4.

[13] At the November 29 hearing the court sua sponte raised the issue of Evan S.'s standing to assert a Fourth Amendment violation and asked counsel to address the issue in light of Alderman v. United States, 394 U.S. 165 (1969). See also Brown v. United States, 411 U.S. 223 (1973); Simmons v. United States, 390 U.S. 377 (1968); Jones v. United States, 362 U.S. 257 (1960). However, one week after the hearing, the United States Supreme Court, in Rakas v. Illinois, 439 U.S. 128 (1978), said that rather than focusing on the question of standing the inquiry should involve "rigorous application" of the principle that the rights secured by the Fourth Amendment are personal. The Court thus concluded that "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment rather than on any theoretically separate but invariably intertwined concept of standing." Id. at 4028. The court has extensively reviewed Rakas and each of the cited decisions, as well as others, e.g., People v. Martin, 45 Cal.2d 755, 290 P.2d 853 (1955), and its progeny, and concludes that Evan S.'s Fourth Amendment rights were violated because he was "seized" while the two mi-

Accordingly, the minors' motion to suppress must be granted. In view of the disposition of the Fourth Amendment issue, which requires a suppression of all the evidence seized as a result of the unlawful stop, the court does not reach William B.'s Fifth Amendment claim.

nors were walking together. The stop that the officers effected was one stop, not two. All of the evidence obtained as a result of that stop was illegally obtained because the stop was in violation of both minors' Fourth Amendment rights.