FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EDWARD SETH TRZASKA,

    Defendant - Appellant.

No. 17-4117
(D.C. No. 2:00-CR-00023-DB-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **BALDOCK**, and **CARSON**, Circuit Judges.

Edward Seth Trzaska appeals from the district court's denial of his motion
to expunge his arrest records relating to a child pornography charge that was later
dismissed. He argues that the district court abused its discretion by denying his
expungement motion solely because he failed to make a showing that the
government had committed misconduct in arresting or charging him. He asks us
to outright grant him expungement relief, or, in the alternative, to vacate and
remand with instructions to the district court to conduct an evidentiary hearing

---

[*]     This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

regarding the averments contained in his motion. For the reasons that follow, we **reverse** the district court's order denying expungement and **remand** the case with instructions to the court to **vacate** its judgment and conduct further proceedings consistent with this order and judgment.

## I

In January 2000, a federal grand jury indicted Mr. Trzaska for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). A month after being charged and pleading not guilty, Mr. Trzaska filed a suppression motion. He sought to suppress evidence found at his home during a warrantless search; he alleged that law enforcement lacked proper consent. Two days before a scheduled hearing on the motion to suppress, the government sought, and was later granted, a dismissal of the indictment against Mr. Trzaska in "the interest of justice" pursuant to Federal Rule of Criminal Procedure 48(a). R., Vol. I, at 14 (Mot. to Dismiss, filed Mar. 7, 2000).

Seventeen years later, Mr. Trzaska filed a pro se motion to expunge all records relating to the 2000 arrest. He alleged in the motion that his arrest was unlawful since it was premised on an unconstitutional search. Mr. Trzaska also alleged that the records had "been used to d[e]stroy" his "life" and "his marriage"; that they had barred him from participating in certain prison programs during his current incarceration in Nevada; and that they had badly hurt his

2

employment prospects. *Id.* at 21–23 (Pet. for Expungement of Records, filed Mar. 20, 2017).

The district court denied Mr. Trzaska's expungement motion. Citing this court's decision in *United States v. Linn*, 513 F.2d 925 (10th Cir. 1975), the district court described its equitable expungement power as limited to instances of "unconstitutional action or unlawful arrest," R., Vol. I, at 47 (Dist. Ct. Order, dated July 5, 2017). As the court reasoned, Mr. Trzaska had presented no evidence of any such unlawful government conduct: the trial court in 2000 had never considered the merits of Mr. Trzaska's motion to suppress and there was no evidence before the court suggesting that the charges were improperly brought or not supported by probable cause. Thus, the court ruled that Mr. Trzaska had "failed to show that his case is sufficiently extreme and unusual" to warrant the court's exercise of its equitable discretion to expunge his records. *Id.* at 48. The court made this ruling without ordering the government to file a response or holding a hearing.

Mr. Trzaska timely filed a notice of appeal. Initially, he proceeded pro se, filing an opening brief and a reply brief.[1] We subsequently appointed counsel for Mr. Trzaska, and his counsel filed a supplemental brief. The government

---

[1] We liberally construe Mr. Trzaska's pro se filings. *See, e.g., Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010); *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

declined the opportunity to file a supplemental brief. Counsel for both parties, however, presented oral arguments before this court.

Mr. Trzaska argues that the district court committed reversible error by denying his expungement motion solely on the basis that he failed to make a showing that the government had committed misconduct in arresting or charging him. He asks us to either grant him expungement relief outright, or otherwise to vacate the denial and remand with instructions for the district court to conduct an evidentiary hearing as to the averments contained in his motion.

## II

We review a district court's denial of an expungement motion for an abuse of discretion. *See United States v. Friesen*, 853 F.2d 816, 817 (10th Cir. 1988). "An abuse of discretion occurs where a decision is premised on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1245 (10th Cir. 2017) (quoting *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016)).

## III

Given the allegations contained in Mr. Trzaska's expungement motion, and the applicable legal standards, we agree with Mr. Trzaska that the district court committed reversible error in denying his motion on the sole ground that he had not established the existence of unlawful government conduct relating to his

4

arrest or his charge. This error is a legal one. And, because the court's denial of Mr. Trzaska's expungement motion was based on it, the court's denial constitutes an abuse of discretion.

## A

Although (with very limited exceptions not relevant here) district courts lack statutory authority to expunge arrest records, *see United States v. Pinto*, 1 F.3d 1069, 1070 & n.1 (10th Cir. 1993), we have held that they have the authority to do so under their inherent equitable powers, *see Linn*, 513 F.2d at 927.[2] *See*

---

[2]    We note that, in light of the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994), there is a "growing appellate consensus," *United States v. Wahi*, 850 F.3d 296, 298 (7th Cir. 2017), that federal courts lack inherent authority to expunge criminal records relying solely upon equitable grounds. In *Kokkonen*, a civil case regarding a district court's authority to hear a post-judgment motion to enforce the settlement agreement in dispute, the Supreme Court stated that ancillary jurisdiction gives district courts limited inherent authority to assert jurisdiction "over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." 511 U.S. at 378. Such inherent power, the Court held, exists for "two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (citations omitted).

Several of our sister circuits have held that a district court's asserted authority to expunge arrest or conviction records exclusively for equitable reasons does not fall under either *Kokkonen* category, and thus such authority is not inherent but rather must be grounded in statutes or the Constitution. *See Wahi*, 850 F.3d at 302–03 (7th Cir. 2017); *Doe v. United States*, 833 F.3d 192, 199 (2d Cir. 2016); *United States v. Field*, 756 F.3d 911, 916 (6th Cir. 2014); *United States v. Coloian*, 480 F.3d 47, 52 (1st Cir. 2007); *United States v. Meyer*, 439

(continued...)

5

F.3d 855, 859–60 (8th Cir. 2006); *United States v. Dunegan*, 251 F.3d 477, 479 (3d Cir. 2001); *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000). To be sure, as relevant here, at least one of these circuits has suggested—albeit in dicta—that even if *Kokkonen* does not allow district courts to exercise jurisdiction over equitable expungement of records of *valid convictions*, "exercising ancillary jurisdiction to expunge (seal, delete) *arrest* records *following a district court's order of dismissal* appears to comport with *Kokkonen* (insofar as it applies to criminal cases) because it may serve to 'effectuate [that] decree[ ].'" *Doe*, 833 F.3d at 197 n.2 (alterations in original) (emphasis added) (quoting *Kokkonen*, 511 U.S. at 380). But, absent statutory authority, these circuits have generally signaled that they will only entertain expungement motions when the claim is at least partly based on "an unlawful arrest or conviction." *Sumner*, 226 F.3d at 1014.

Here, neither the parties nor the district court has mentioned this issue, nor have the parties asked us to reconsider our precedent, going back at least as far as *Linn*, 513 F.2d at 927, which vests district courts with inherent authority to grant expungement on equitable grounds. Although we have an independent "obligation to assure ourselves of litigants' standing under Article III," *Frank v. Gaos*, --- U.S. ----, 139 S. Ct. 1041, 1046 (2019) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006)), we nevertheless decide to adhere to *Linn* and our prior cases holding that district courts have inherent jurisdiction for two salient reasons. First, while *Kokkonen* spoke to the limits on ancillary jurisdiction, 511 U.S. at 378–80, it did not specifically address motions for expungement or whether such motions fall into either of its two categories. And we "are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *Barnes v. United States*, 776 F.3d 1134, 1147 (10th Cir. 2015) (emphasis omitted) (quoting *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam)); *see also* Bryan A. Garner et al., The Law of Judicial Precedent § 36, at 305 (2016) ("When a higher court's decision does not plainly or expressly overrule a lower court's holding, the Fifth Circuit has held that '[a] Supreme Court decision must be more than merely illuminating . . . because a panel . . . can only overrule a prior panel decision if such overruling is *unequivocally directed* by controlling Supreme Court precedent.'" (emphasis added) (quoting *In re Texas Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 331 (5th Cir. 2013))). Thus, exercising "due respect for existing precedent," we cannot conclude that *Kokkonen* is the sort of

(continued...)

6

*also* Lahny R. Silva, *Clean Slate: Expanding Expungements and Pardons for Non-Violent Federal Offenders*, 79 U. CIN. L. REV. 155, 187 (2010) (noting that some circuits, including the Tenth Circuit, base jurisdiction to adjudicate requests for expungement on "the inherent equitable power doctrine").  This inherent power is "committed to the discretion of the trial court, but it is not a remedy to be granted frequently," *Friesen*, 853 F.2d at 817–18; rather, expungement should be limited to "rare or extreme instances," *Camfield v. City of Okla. City*, 248 F.3d 1214, 1234 (10th Cir. 2001); *see also Bromley v. Crisp*, 561 F.2d 1351, 1364 (10th Cir.

---

[2](...continued)
"indisputable and pellucid . . . intervening (i.e., superseding) law that would permit us to hold (without en banc consideration)" that district courts lack jurisdiction to consider petitions for equitable expungement.  *Barnes*, 776 F.3d at 1147; *see id.* at 1144–48 (holding that intervening Supreme Court cases indicating that time limitation was *non*-jurisdictional in certain contexts did not allow us to reverse our cases holding that limitation *was* jurisdictional in a distinct context, despite decisions of our sister circuits reversing their own cases).

And, second, even after *Kokkonen*, we have continued to state in binding authority that "[i]t is well settled in this circuit that courts have inherent equitable authority to order the expungement of an arrest record or a conviction in rare or extreme instances." *Camfield v. City of Okla. City*, 248 F.3d 1214, 1234 (10th Cir. 2001).  Admittedly, *Camfield*'s discussion of expungement arose in a distinct procedural posture—it was addressing expungement first sought in a Federal Rule of Civil Procedure 59(e) motion—but it did cite our decisions in *Pinto* and *Linn* in support of its assertion of jurisdiction.  *Id.*; *see also United States v. Aston*, 132 F.3d 43, 1997 WL 755136, at *1–2 (10th Cir. 1997) (unpublished table decision) (exercising jurisdiction to affirm denial of equitable expungement motion post-*Kokkonen*).  Thus, while we acknowledge the post-*Kokkonen* cases from other circuits, we decline to depart from our pre-*Kokkonen* cases holding—and our post-*Kokkonen* case suggesting—that district courts do indeed have inherent authority to equitably expunge arrest records.

7

1977) (en banc) ("[T]he [expungement] power is a narrow one, reserved for extreme cases.").

In the context of a motion to expunge records of criminal *convictions*—as opposed to records of an arrest or dismissal of charges—we have said that the motion must allege that the conviction is legally infirm or was secured through improper government conduct. *Compare Pinto*, 1 F.3d at 1070 ("The case law does support the notion that when a conviction is somehow invalidated, such as by a finding that it was unconstitutional, illegal, or *obtained through government misconduct*, a federal court may, in appropriate cases, grant expungement." (emphasis added)), *and id.* (specifically ruling that "federal courts may, in extreme cases, expunge a federal conviction that has, in some manner, been invalidated"), *with id.* (noting that "there is a large difference between expunging the *arrest record* of a presumably innocent person, and expunging *the conviction* of a person adjudged as guilty in a court of law" (emphases added)), *and id.* ("We have stated that, in extreme circumstances, an arrest record may be expunged after dismissal of the charges or acquittal."). *Cf. Sanchez v. Melendrez*, 934 F. Supp. 2d 1325, 1342 (D.N.M. 2013) (noting, when discussing *Pinto*, a conviction-related case, that the "distinction is an important one" between the litigant who "has not sustained a conviction" and one who has; however, the former scenario "does not automatically bring [the litigant's] case into the realm of the exceptional," meriting expungement relief).

8

Where warranted, expungement aims to "remov[e] the stigma and disabilities that come with having a criminal history." Mackenzie J. Yee, Note, *Expungement Law: An Extraordinary Remedy for an Extraordinary Harm*, 25 GEO. J. ON POVERTY L. & POL'Y 169, 178 (2017); *see also* Deborah Sprenger, Annotation, *Expunction of Federal Arrest Records in Absence of Conviction*, 97 A.L.R. FED. 652, § 2 (1990) (noting that "dissemination of the arrest record can inflict definite and demonstrable harm on the arrested individual").

An expungement motion may fail to aver a legally viable claim for relief on its face; if so, it should be denied on that basis. *See Pinto*, 1 F.3d at 1071 ("Defendant argues that it was improper to deny her petition without holding a hearing. . . . Absent an allegation that *the conviction* was somehow invalid, Defendant's arguments that she had been punished enough are simply *insufficient as a matter of law*." (emphases added)). For example, we have said that "an acquittal, standing alone, is not in itself sufficient to warrant an [expungement] of an arrest record." *Linn*, 513 F.2d at 927–28; *see Friesen*, 853 F.2d at 818 ("[M]ere acquittal of the subsequent charge is an insufficient reason to grant [expungement]."); *see also Diamond v. United States*, 649 F.2d 496, 498 (7th Cir. 1981) (noting that "[t]he rule of the case [i.e., *Linn*] is simply that a mere acquittal is insufficient to grant [expungement]"), *abrogated on other grounds by United States v. Wahi*, 850 F.3d 296 (7th Cir. 2017).

9

A movant must do more, however, than simply aver a legally viable claim for expungement relief; the movant also must establish that his or her averments are grounded in fact through some form of evidentiary showing. *See Friesen*, 853 F.2d at 818 (reversing trial court's order granting expungement of defendant's arrest record where there was "no factual basis in this record" for the defendant's "unsupported conclusions" regarding the reputational and professional harms that the arrest record had caused him); Silva, *supra*, at 187–88 ("The petitioner [seeking expungement relief] needs evidence . . . showing that the circumstances surrounding the case call for the application of fairness and justice."); *id.* at 189 ("The Tenth Circuit has emphasized the importance of evidentiary proof of actual harms suffered by the defendant when petitioning the court for expungement."); *see also Diamond*, 649 F.2d at 499 (expressing "approv[al] [of] the case-by-case approach" of our *Linn* decision to assessing whether the defendant's circumstances justify expungement relief, but noting that "[s]uch an approach behooves the district court to develop a complete factual record"); *Ray v. United States*, 943 F.2d 57, 1991 WL 172679, at *1 (10th Cir. 1991) (unpublished table decision) (upholding the trial court's denial of expungement relief, upon observing that petitioner's "conclusory claims are speculative and unsupported by the record"); *United States v. Williams*, 582 F. Supp. 2d 1345, 1347 (D. Utah 2008) ("In evaluating the individual harms caused by a criminal record, and in order to subsequently apply the balancing test, the court [i.e., the Tenth Circuit]

10

has emphasized the importance of evidentiary proof of actual adverse consequences suffered by the defendant."); *United States v. Johnson*, 714 F. Supp. 522, 525 (S.D. Fla. 1989) ("Before a court undertakes the drastic step of ordering expungement to protect a defendant from harm, the court must determine that *the harm is real*." (emphasis added)).

If a movant is successful in making this factual showing, the district court is obliged to balance "the interests of the State in maintaining records for law enforcement against the individual's rights." *Bromley*, 561 F.2d at 1364; *see id.* (vacating the grant of an expungement motion because "the district court apparently did not" "balance the equities and exercise discretion"); *Linn*, 513 F.2d at 927 (noting with apparent approval that "[c]ertain of the cases call for a 'balancing' of the equities between the Government's need to maintain extensive records in order to aid in general law enforcement and the individual's right of privacy"); *see also Williams*, 582 F. Supp. 2d at 1347 ("In deciding issues of expungement the 10th [C]ircuit has acknowledged and applied the 'balancing test' method used by many courts in sister circuits."); Yee, *supra*, at 178 (noting that "judicial expungement involve[s] balancing the harm to the individual caused by the existence of the criminal record against the public interest in preserving the record"); *cf.* Silva, *supra*, at 187 ("Typically the courts use a balancing test that weighs the petitioner's interest in avoiding the harm that results from a conviction

11

against the public's interest in maintaining criminal records and promoting effective law enforcement.").

Relevant factors in this balancing may include, among others, the time that has elapsed since the arrest, *see, e.g.*, *Diamond*, 649 F.2d at 499 ("The Government should be required to state . . . why it is necessary to maintain this 17-year-old rap sheet."), as well as considerations relating to culpability, *see, e.g.*, *United States v. Schnitzer*, 567 F.2d 536, 540 (2d Cir. 1977) (discussing the "proper balancing of the equities," in the context of rejecting an expungement motion, and noting that "[t]he [dismissed] indictment constitutes a finding of probable cause by the grand jurors," and "the dismissal of the indictment did not concede the innocence of [the movant]"); *United States v. Van Wagner*, 746 F. Supp. 619, 620–22 (E.D. Va. 1990) (holding, where movant did not dispute that "there was probable cause to arrest" him in connection with a drug-trafficking and money-laundering conspiracy but the charges were dismissed and the government conceded his innocence, that movant's "real and permanent economic harm as a result of the arrest record" warranted grant of expungement, which "gives the relief justice requires"). *See also* Sprenger, *supra*, § 2 (noting that "[t]here are several factors that courts have considered in granting or denying motions for expungement of arrest records," including "the harm to an arrestee's employment," "reputation," and whether "he or she may be a suspect in future criminal investigations"). Through this balancing process, the district court

applies its equitable discretion to determine whether "unusually compelling circumstances" are present that warrant granting expungement. *Friesen*, 853 F.2d at 818.

**B**

The district court erred by effectively treating Mr. Trzaska's expungement claim as legally invalid on its face because Mr. Trzaska had not established the existence of unlawful government conduct relating to his arrest or charge. The district court's approach is inconsistent with our caselaw, which makes clear that, as to motions to expunge arrest records related to acquittals or dismissals of charges, the movant need not allege or show government misconduct.

We have indicated that the requirement to allege and show government misconduct applies *only* to motions to expunge records of a criminal conviction; such motions have been held to a higher standard than those seeking expungement of records relating to acquittals or dismissals of charges. *See Pinto*, 1 F.3d at 1070 (requiring a showing of government misconduct to expunge records of convictions, but not acquittals or dismissals, because there is a "large difference between expunging the arrest record of a presumably innocent person, and expunging the conviction of a person adjudged as guilty in a court of law").

Our decision in *Linn* does not suggest otherwise, and the district court misread that case in concluding that it did. In *Linn*, we affirmed the denial of a motion to expunge arrest records relating to various white-collar charges of which

13

the defendant had been acquitted. *See* 513 F.2d at 927–28. Though the defendant argued that the records would damage his personal and professional reputation, we concluded that this argument could be made by anyone acquitted of any criminal charge. *See id.* Accordingly, we stated that the case "really boil[ed] down to whether the fact that Linn was acquitted [was] in itself sufficient" to warrant expungement of the arrest record, and we held that it was not. *Id.* at 928.

In the process of explaining that Mr. Linn's expungement motion was legally invalid, we remarked that he had made no showing of government impropriety. *See id.* at 927–28. More specifically, we surveyed the caselaw and noted that "[u]nder the cases . . . , [1] where the arrest itself was an unlawful one, or [2] where the arrest represented harassing action by the police, or [3] where the statute under which the arrestee was prosecuted was itself unconstitutional, courts have ordered [expungement]." *Id.* at 927. And, then, we explained that by contrast the *Linn* defendant's arrest was a "lawful one, pursuant to an indictment returned by a duly constituted grand jury," and "[t]he charges set forth in the indictment were lawful ones not subject to any constitutional infirmity." *Id.* at 928. Furthermore, there was no indication of harassing action by the government. *See id.*

But, as the Seventh Circuit discerned, in the context of a request to expunge an arrest record, "*Linn* does not stand for the proposition that [expungement] may be ordered *only* if one of the three circumstances described therein are present.

14

Rather, those circumstances merely were illustrative of situations in which [expungement] had been considered appropriate." *Diamond*, 649 F.2d at 498 (emphasis added). At bottom, reasoned *Diamond*, "[t]he rule of the case [i.e., *Linn*] is simply that a mere acquittal is insufficient to grant [expungement]." *Id.* Put another way, outside of the criminal-conviction context, *Linn* merely describes types of government misconduct that are *sufficient* to warrant expungement; it did not hold that the presence of such misconduct was *necessary* to justify expungement. *See, e.g., United States v. Burkholder*, 816 F.3d 607, 620 n.10 (10th Cir. 2016) ("An event or condition is *sufficient* if its existence means that another event or condition will occur. An event or condition is *necessary* if, in its absence, another event or condition *could not* occur." (final emphasis added)). Ultimately, as *Linn* itself understood, "there appears to be no definitive, all-purpose rule to govern requests of this nature [i.e., for expungement], and to a considerable degree each case must stand on its own two feet." *Linn*, 513 F.2d at 927.

This reading of *Linn* also is confirmed by our later decision in *Friesen*. There, an attorney, Mr. Friesen, had been charged with conspiracy to knowingly and intentionally manufacture cocaine. *See* 853 F.2d at 817. After he was acquitted on all counts, he filed a motion to expunge his related arrest record. *Id.* In reviewing the district court's grant of his motion, we noted that, like the defendant in *Linn*, Mr. Friesen had not established any government impropriety

15

relating to his arrest. *See id.* at 818 ("[I]n *Linn*, as here, the arrest was lawful, and there was sufficient evidence of guilt for the jury to consider.").

However, this did not mark the end of the road for Mr. Friesen's expungement motion. Instead, we noted that "those similarities [with *Linn*] notwithstanding, [Mr. Friesen's] case has an additional dimension which requires further inquiry." *Id.* This "additional dimension" was that "drug offenses may bear an opprobrium not inherent in other crimes; therefore, an arrest for a drug offense may result in that kind of harm to a defendant which can be removed only by [expungement]." *Id.* Regarding this factor, we reasoned: "If true, and if found by the trial court to be unusually compelling circumstances, these may be reasons to justify the exercise of the trial court's 'narrow' power to order [expungement]." *Id.* Thus, even though Mr. Friesen failed to make a showing of government misconduct, we effectively concluded that his claim to expunge his arrest records was legally viable and that he should be given an opportunity to factually validate it.

Accordingly, we conclude that the district court erred here by effectively treating Mr. Trzaska's motion to expunge his arrest record as legally invalid on its face because Mr. Trzaska had not established the existence of unlawful government conduct relating to his arrest or charge. Furthermore, guided by *Friesen*, we may confidently opine at this stage of the litigation that, "[i]f true, and if found by the trial court to be unusually compelling circumstances, these

16

[allegations of harm to Mr. Trzaska] may be reasons to justify the exercise of the trial court's 'narrow' power to order [expungement]." *Id.*

In this regard, we note that Mr. Trzaska's motion for expungement is akin to the one in *Friesen*. Specifically, we read Mr. Trzaska's motion as primarily attributing the harms caused by his arrest record to an "additional dimension"— that is, the "opprobrium not inherent in other crimes" of child pornography offenses. *Id.* Recall that Mr. Trzaska alleged, *inter alia*, that his arrest record has damaged his employment prospects and ability to participate in prison programs. Though Mr. Trzaska did not explicitly state that these harms stemmed from the stigma of a child pornography charge, in light of our repeated recognition of the acute opprobrium inherent in such offenses, *see United States v. Burkhart*, 602 F.3d 1202, 1207 (10th Cir. 2010) (describing the "severe social stigma" associated with child pornography possession); *United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir. 2005) (discussing the tendency of offenders to conceal child pornography because of the social stigma associated with it), and given that "[a] document filed *pro se* is to be liberally construed," *United States v. Trent*, 884 F.3d 985, 993 (10th Cir.) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), *cert. denied*, 139 S. Ct. 615 (2018), we believe that it is natural to interpret Mr. Trzaska's motion as effectively making this assertion about the primary source of his harm. Thus, like the movant in *Friesen*, Mr. Trzaska's motion for expungement presented the district court with "an additional

17

dimension which requires further inquiry," *Friesen*, 853 F.2d at 818—that is, the acute opprobrium of the child pornography charge and the harm it caused him.

In sum, we hold that the district court abused its discretion when it denied Mr. Trzaska's expungement motion solely because he made no showing of unlawful government conduct; this basis for denial was legally erroneous. Further, as in *Friesen*, we conclude that Mr. Trzaska presented the district court with "an additional dimension which requires further inquiry," *id.*, relating to the acute opprobrium of child pornography charges, like his, and the specific harm that he has experienced because of his arrest record for a child pornography offense.[3]

## C

As a consequence of this favorable holding, Mr. Trzaska contends that we should grant him expungement relief outright. We reject this contention. Such a

---

[3] Although *Linn* makes clear that "a mere acquittal" or, analogously, the dismissal of a criminal charge, is legally "insufficient," standing alone, to warrant expungement, *Diamond*, 649 F.2d at 498; *see Linn*, 513 F.2d at 928, *Linn* also instructs courts, in the context of requests to expunge arrest records, to adopt a "case-by-case approach," *Diamond*, 649 F.2d at 499; *see Linn*, 513 F.2d at 927 (noting that "there appears to be no definitive, all-purpose rule to govern requests of this nature, and to a considerable degree each case must stand on its own two feet"). Therefore, we are *not* saying that the presence of an "additional dimension," *Friesen*, 853 F.2d at 818, in the form of an acutely opprobrious offense, like child pornography possession, is an essential ingredient to a legally viable expungement claim. Rather, with the clear guidance of *Friesen*, we are simply able to readily underscore here that Mr. Trzaska's claim "requires further inquiry." *Id.* There undoubtedly will be other circumstances that merit such inquiry, but we have no need to address them here.

18

course would be both unprecedented and inconsistent with the district court's proper role in finding facts and balancing the interests of the movant and the government with respect to expungement. *See*, *e.g.*, *Friesen*, 853 F.2d at 818; *Bromley*, 561 F.2d at 1364. Recall that, even if a movant is successful in pleading a legally viable claim for expungement, that is just the first—albeit necessary—step on the road to expungement relief. The movant must then establish a factual foundation for its claim. *See, e.g.*, *Friesen*, 853 F.2d at 818; *Williams*, 582 F. Supp. 2d at 1347; Silva, *supra*, at 187–88. And, only at that point is the district court obliged to balance the interests of the movant with those of the government to determine if the movant should receive a favorable exercise of its equitable discretion.

Our holding here only implicates the first step on this road. We have concluded that the district court erred by effectively treating Mr. Trzaska's expungement claim as legally invalid on its face because Mr. Trzaska had not established the existence of unlawful government conduct relating to his arrest or charge. Moreover, due to the guidepost of *Friesen*, we were able to readily determine here that this case has "an additional dimension which requires further inquiry," *Friesen*, 853 F.2d at 818, concerning the acute opprobrium of child pornography charges, like Mr. Trzaska's, and the alleged harm caused by his arrest record for a child pornography offense.

19

Mr. Trzaska still must do more; notably, he must establish a factual foundation for his claim. Therefore, instead of providing expungement relief outright, we will remand to the district court with instructions to vacate its judgment and to conduct further proceedings.

Mr. Trzaska's arguments lead us to provide some guidance regarding the nature of those proceedings. He asks us to instruct the district court on remand to conduct an evidentiary hearing in order to make factual findings as to the truth of the averments in his expungement motion. To support this argument, Mr. Trzaska points to *Friesen*, where we reversed the grant of an expungement motion notably because of the absence of a "factual basis in the record" to support the motion's allegations of "stigma" and related damage to movant's "private or professional life" allegedly stemming from the record of his "arrest for a drug offense." *Id.* We reasoned that the district court had "based its judgment only upon the unsupported conclusions set forth" in the defendant's motion. *Id.* In reversing, we noted that the necessary facts "are properly established in an adversary proceeding," and, *in that case*, remanded for the court to "hold[] an evidentiary hearing and [to] mak[e] findings of fact." *Id.*

As we read it, the upshot of *Friesen* is that the panel placed the burden on movants to establish a factual foundation for their expungement claims and opined that this should occur in some form of "adversary proceeding." *Id.*; *see also Williams*, 582 F. Supp. 2d at 1347 (noting that "[t]he importance of factual

20

evidence showing actual adverse consequences to the defendant is made especially clear in *Friesen*"); Silva, *supra*, at 189 & n.240 (citing *Friesen* and noting that "[t]he Tenth Circuit has emphasized the importance of evidentiary proof of actual harms suffered by the defendant when petitioning the court for expungement"). We do not read *Friesen*, however, as mandating that, in every instance, this adversary proceeding should take the form of an evidentiary hearing. At the district court's discretion, it may allow movants to factually support their expungement claims by attaching affidavits, declarations, and other documentary evidence to their expungement motions. In this event, the government should be given an opportunity to present responsive materials in a similar form. Of course, the court may elect instead to conduct a full-blown evidentiary hearing.

The critical point is that the movant bears the burden of establishing—through an adversary process—the factual foundation for its claim for expungement relief. And *only* if it is successful in doing so is the trial court obliged to balance the interests of the movant against those of the government. *See Friesen*, 853 F.2d at 818 (noting that, if the trial court found the "reasons" put forward in the expungement request to be "true" then the trial court should determine if they "justify the exercise of the trial court's 'narrow' power to order [expungement]"); *Bromley*, 561 F.2d at 1364 (vacating the grant of an expungement motion because "the district court apparently did not" "balance the

21

equities and exercise discretion"); *see also Williams*, 582 F. Supp. 2d at 1347 ("In evaluating the individual harms caused by a criminal record, and *in order to subsequently apply the balancing test*, the court [i.e., the Tenth Circuit] has emphasized the importance of evidentiary proof of actual adverse consequences suffered by the defendant." (emphasis added)).

The district court's erroneous determination as to the legal invalidity of Mr. Trzaska's expungement motion eliminated the need for any inquiry into the factual basis for the motion. On remand, in addition to any further briefing it may choose to order, the district court should grant Mr. Trzaska an opportunity to offer evidentiary materials to establish (if possible) a factual foundation for his claim for expungement—through supplementation of his motion, participation in an evidentiary hearing, or other means that the court, in its discretion, directs. The government should be given an opportunity to respond in like form. If, and only if, the district court makes findings establishing the truth of Mr. Trzaska's legally viable, expungement-related averments, then the court must balance Mr. Trzaska's interests with the government's and decide whether Mr. Trzaska's expungement motion warrants a favorable exercise of the court's equitable discretion—that is, whether his reasons for requesting expungement are "unusually compelling." *Friesen*, 853 F.2d at 818.

**IV**

For the foregoing reasons, we **REVERSE** the district court's order denying Mr. Trzaska's expungement motion and **REMAND** the case with instructions to the court to **VACATE** its judgment and conduct further proceedings consistent with this order and judgment.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge